398 STATE v. GOTTFREEDSON.

[No. 3788. Decided March 30, 1901.]

# THE STATE OF WASHINGTON, *Respondent,* v. FRANK GOTTFREEDSON, *Appellant.*

CRIMINAL LAW — SUFFICIENCY OF INFORMATION — DATE OF OFFENSE.

The failure to allege the exact date of the commission of a crime is not ground of demurrer against an information, where a date within the statute of limitations is alleged as the time of its commission.

SAME — DEFENDANT AS WITNESS — FORMER CONVICTION.

In a prosecution for horse stealing, it is error to compel defendant, who had offered himself as a witness, to testify that he had once before been convicted of horse stealing, since the tendency of such testimony would be to prejudice the jury, and the demands of the statute permitting conviction of a crime to be shown to affect the credibility of a person offered as a witness are met by proof of the conviction, without unnecessary parade before the jury that defendant had at one time been guilty of the exact crime for which he is at the time on trial.

SAME — EVIDENCE — SIMILAR OFFENSE.

In a prosecution of defendant for horse stealing, it is error to admit testimony showing that he had stolen another horse at about the same time with the one for whose theft he was standing trial, where the two transactions are not so woven together as to constitute interdependent crimes, but the sole effect of the testimony would be to establish the bad character of defendant and prejudice the jury against him.

Appeal from Superior Court, Okanogan County.—Hon. CHARLES H. NEAL, Judge. Reversed.

*Edward B. Simmons,* for appellant.

*A. W. Barry,* Prosecuting Attorney, for the State.

The opinion of the court was delivered by

DUNBAR, J.—Appellant was informed against for horse stealing in Okanogan county. The part of the information which it is necessary to review is as follows:

"Frank Gottfreedson is hereby accused by A. W. Barry, prosecuting attorney in and for Okanogan county, state of Washington, in the name and by the authority of the state of Washington, and on oath by this information, of the crime of horse stealing committed as follows, towit: That on the ........ day of ............, 1899, and within three years next before the filing of this information," etc.

A demurrer was interposed to the information for the reason that it did not substantially conform to the requirements of the Code and that the facts charged did not constitute a crime. The demurrer was overruled and the order of the court overruling the demurrer is the first alleged error; the contention being that no sufficient date was alleged. We think the information is sufficient if the time is alleged at any time within the statute of limitations. The insertion of a definite date, however, or a date as definite as could be ascertained by the pleader, would be a better practice, and would accord fairer treatment to the defendant.

We think, however, the court erred in compelling the defendant, who offered himself as a witness, to testify that he had been convicted of horse stealing. The statute provides that no person offered as a witness shall be excluded from giving evidence by reason of the conviction of a crime, but such conviction may be shown to affect his credibility. When it was shown that the defendant had been convicted of a crime, the demands of the statute had been met; for the purpose of the statute is only to affect the credibility of the witness, and not to prejudice the minds of the jury by parading before them

the fact that the witness had been guilty of the exact crime for which he was then on trial. The tendency of such testimony as that on the minds of the jury would not be so much to affect the witness's credibility as to cause the jury to conclude that, because he had before been convicted of horse stealing, the probabilities were that he was guilty of stealing the horse in question. Upon this same line, the state introduced testimony tending to show that the defendant in this case had stolen another horse at the same time he is alleged to have stolen the one for which he was standing his trial. It appears that, at the time the horse which the defendant was charged with steal- ing was turned out on the range, another horse, owned by one Proebstal, was turned out, which was afterwards traced into the possession of the defendant; and the prosecuting attorney, in his statement, told the jury that he would show that the horse mentioned in the information and the one belonging to Proebstal were both turned out on the public range together, and that they were both later found, the Proebstal horse in the possession of the defendant, the Errickson horse (the one described in the information) in the possession of one Carson, who had secured the same from the defendant; both said horses having been stolen by defendant and taken to Ferry county, Washington. Witness McClure, among other things, testified as follows:

"On my return with the mare I saw defendant at Cur- lew ferry and told him I had replevined her. He said he got her from a man, I do not now remember who it was he said he got her from. He said he traded two pack horses for the Proebstal horse.

Mr. Simmons: We object to any statement as to the Proebstal horse, and move the court to strike out that part of the statement on the ground that the same is irrele- vant, improper and immaterial, and is an attempt to prove a different alleged offense than the one set forth in the information, and for which we are being tried.

The Court:   Motion denied.

Mr. Simmons:   We except.

Mr. Barry:   Did he, defendant, say anything about the value of the Proebstal horse?

Mr. Simmons:   We object upon the same grounds as before stated.

The Court:   He may answer.

Witness:   He said he had been offered $125 for the Proebstal horse.

Mr. Simmons:   We except.

Witness:   He made no objection to our taking it along.   He told us where he got it, but I do not now remember.   He said he traded two pack horses for it, the Proebstal horse, and took a bill of sale of it.

Mr. Simmons:   Same objection as to all of these statements relative to the Proebstal horse, and we move to strike the same out, and that the court instruct the jury not to consider them.

The Court:   They may stand.

Mr. Simmons:   Exception."

The same character of testimony was reiterated by witness Patterson, over the objections of the defendant, and also by the witness Proebstal.   The general rule is well established that proof of the commission of a separate and distinct crime will not be admitted for the purpose of aiding the conviction of defendant for the crime charged. There are exceptions, however, to this general rule, as where the testimony shows a connection between the transaction under investigation and some other transaction, and where they are so interwoven that the omission of the testimony in relation to the other crime would detract something from the testimony which the state would have a right to introduce as tending to show the commission of the crime charged by the defendant, or where it is apparent that the parties had a common purpose in the transaction of both crimes, or where the testimony tending to show the commission of one crime tends to prove a condition of mind which must necessarily be entertained by the de-

fendant in the commission of the crime charged; as, for instance, in *Commonwealth v. McCarthy,* 119 Mass. 354, it was held that on an indictment for the malicious burning of a building on September 10, 1875, it was competent for the government to show, on the question of the intent with which the defendant burned the building on that day (the building having been insured), that on August 24 and on September 6, 1875, the defendant set fire to a shed, which was not insured, ten feet distant from the building, and connected therewith by a flight of steps. In *State v. Baker,* 23 Ore. 441 (32 Pac. 161), it was held that on a trial for stealing a mare it was admissible to prove that on the same night on which the stealing occurred another mare was stolen from neighbors of the person who owned the mare alleged to have been stolen, for the reason that under the circumstances of that case it was impracticable to trace defendants' connection with the mare described in the indictment, from the time it was stolen until their arrest, without discussing the commission of the other crimes. And, generally, we think that proof of interdependent crimes is admissible. But the rule has never been laid down that interdependent crimes may be proven, the only effect of which would be to establish the bad character of the defendant, and create prejudice in the minds of the jurors against him because he was unable to meet and successfully defend against charges which he had no notice of, and could not have, in the very nature of things, been prepared to defend against. In other words, there is no system of jurisprudence which would allow a person to be convicted of one crime because he was shown upon the trial to be guilty of another.

In *Jordan v. Osgood,* 109 Mass. 457 (12 Am. Rep. 731), at the trial of an action which presented the issue whether the defendant obtained goods from the plaintiff by fraudulent representations, and also the issue whether

he obtained the goods intending at the time not to pay for
them, it was held that evidence of other frauds committed
by the defendant about the time of obtaining the goods
and making the alleged representation was not admissible
upon either issue, unless it appeared that such frauds and
the obtaining of the goods in question were parts of one
fraudulent scheme committed in the pursuance of a com-
mon purpose.    In that case the court said:

"The fact that a defendant has committed a similar but
distinct crime or fraud is not competent to prove that he
committed the particular crime or fraud with which he is
charged.    It has no tendency to prove the proposition to
be established by the plaintiffs, but is equally consistent
with an affirmative or negative decision of that proposi-
tion.    The effect of such proof may be to produce such a
state of mind in the jury to whom it is addressed, that a
less weight of testimony satisfies them than would other-
wise be necessary to produce conviction, but it does not
directly tend to prove or disprove the matter in dispute.
The admission of such evidence would introduce a multi-
plicity of collateral issues, calculated to withdraw the at-
tention of the jury from the real issue in the case; and it
would operate unjustly to the defendant, as it requires him
to explain his transactions with others, without any notice
or opportunity for preparation."

These remarks of the learned court apply with great
force to the case at bar.    The testimony furnished by
the state was of the most meager kind, and it may be seri-
ously doubted whether the jury would have found suffi-
cient testimony to have convicted the defendant of the
crime charged had not the testimony been adduced in re-
lation to his transactions with the Proebstal horse,—trans-
actions which, if he had had an opportunity to have ex-
plained, might have presented a different bearing.    In any
event, it is not the policy of the law to allow a citizen to
be convicted of a crime unless that particular crime is
proven.

In *People v. Schweitzer,* 23 Mich. 301, it was said by Judge CHRISTIANCY, who delivered the opinion of the court:

"We see no legal ground upon which the witness, Dumphy, could have been allowed to testify to the commission by the defendant of another and distinct larceny from that for which he was on trial. The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted; and the defendant would thus be prejudiced on the trial of the offense charged, by proof which he has no reason to anticipate, of an offense for which he is not on trial, and to which, when properly called upon to defend, he may have a perfect defense."

At the trial of an indictment for obtaining the property of another by false pretenses in the sale of a horse, evidence of similar pretenses in sales to other persons a short time previously to the sale in question was inadmissible for the purpose of showing the intent with which he made the sale of the horse. *Commonwealth v. Jackson,* 132 Mass. 16. See, also, *State v. Thompson,* 14 Wash. 285 (44 Pac. 533) ; *State v. Bokien,* 14 Wash. 403 (44 Pac. 889).

In the last mentioned case it was held, in a prosecution for obtaining goods under false pretenses in the giving of a check upon a bank in which the defendant had no funds, that it was error to allow the prosecution to introduce testimony of other checks having been given by defendant to other persons, when he had no funds on deposit. In this case the matters testified to were collateral and irrelevant to the issues, in no way tended to establish

the guilt of the defendant, but did tend to inflame the . minds of the jurors against the defendant to his prejudice; and it was, therefore, reversible error.

There are other allegations of error in appellant's brief, but, as upon a re-trial of the cause these will probably not occur again, we do not find it necessary to express any opinion upon them.    But, for the errors reviewed, the judgment will be reversed and a new trial granted.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.